STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-1150

GINA ALPIZAR

VERSUS

DOLLAR GENERAL

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, DOCKET NO. 10-11728
SAM LOWERY, WORKERS' COMPENSATION JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and James T. Genovese, Judges.

AFFIRMED AND RENDERED.

Michael M. Meunier
Sullivan Stolier Knight, LC
909 Poydras Street, Suite 2600
New Orleans, Louisiana 70112
(504) 561-1044
COUNSEL FOR DEFENDANT/APPELLANT:
    Dolgencorp, LLC

Mark Zimmerman
4216 Lake Street
Lake Charles, Louisiana 70605
(337) 474-1644
COUNSEL FOR PLAINTIFF/APPELLEE:
    Gina Alpizar

**GENOVESE, Judge.**

In this workers' compensation case, Defendant/Employer, Dolgencorp, LLC, doing business as Dollar General (hereafter Dollar General),[1] appeals from a judgment in favor of Plaintiff/Claimant, Gina Alpizar, granting her request for a change in orthopedic surgeon, awarding her supplemental earnings benefits (SEB), a functional capacity evaluation (FCE), the costs associated with the litigation, penalties, and attorney fees. Ms. Alpizar has answered the appeal, seeking additional attorney fees for work done on appeal. For the reasons that follow, we affirm the judgment in its entirety, and we render an attorney fee award in favor of Ms. Alpizar for work done on appeal.

## FACTS AND PROCEDURAL HISTORY

On September 2, 2008, Ms. Alpizar, who was employed by Dollar General as an assistant manager of its Merryville, Louisiana store, tripped over a box and injured her right knee and lower back. On December 29, 2010, Ms. Alpizar filed a disputed claim for compensation, alleging that Dollar General denied a doctor-recommended MRI and claiming entitlement to SEB, penalties, and attorney fees. She filed an amended disputed claim for compensation on August 10, 2011, alleging that Dollar General denied doctor-recommended physical therapy and claiming entitlement to penalties and attorney fees.

In its answer, Dollar General admitted that Ms. Alpizar was injured in the course and scope of her employment and that it paid her indemnity benefits from December 2008 through December 2009; however, Dollar General averred that

---

[1]Ms. Alpizar identified her employer as Dollar General in her disputed claim for compensation; however, we note that Dollar General is owned and operated by Dolgencorp, LLC. Since the parties refer to Defendant/Employer herein as Dollar General, we will do likewise.

Ms. Alpizar's "current problems with her back and right knee are not related to the alleged work accident." Dollar General further alleged that Ms. Alpizar had "voluntarily terminated her employment[.]"

This matter was tried on March 4, 2013, after which the Workers' Compensation Judge (WCJ) took the matter under advisement and accepted post-trial memoranda. On May 20, 2013, the WCJ rendered oral reasons, wherein he characterized the matter before him as "focus[ing] on Ms. Alpizar's contention that her employer unreasonably expected her to return to work performing duties beyond the limits of her post-accident physical condition."

As previously stated, there is no dispute that Ms. Alpizar injured her right knee and back while in the course and scope of her employment with Dollar General. She initially saw her primary care physician, Dr. Larry Brown, and nurse practitioner, Anita Drake, at Newton Family Clinic. For her right knee, Ms. Alpizar was treated by Dr. J. David DeLapp. In March 2009, Dr. DeLapp performed a partial lateral meniscectomy and chondroplasty on Ms. Alpizar's right knee. On March 24, 2009, Dr. DeLapp released Ms. Alpizar to "return to work without restrictions concerning her knee only[.]" For her back, Ms. Alpizar was initially treated by Dr. Richard Francis. On September 25, 2009, Dr. Francis performed a lumbar laminectomy and discectomy at L-3, L-4, and L-5 on Ms. Alpizar. On December 17, 2009, Dr. Francis found that Ms. Alpizar had reached "maximum medical improvement" and released her from his care, stating she could "return[] to the workforce in a full duty capacity." It is at this point that Dollar General contends its responsibility for Ms. Alpizar's ailments ceases. Ms. Alpizar, on the other hand, insists that she was unable to return to the workforce when Dr. Francis released her in December 2009, just two months after

2

a multi-level back surgery. She alleges that her medical treatment post-December 2009 is Dollar General's continuing responsibility because she had not fully recovered from her September 2, 2008 work accident.

Ms. Alpizar testified that she continued to experience pain after her release by Dr. Francis in December 2009, and returned to the Newton Family Clinic. On April 5, 2010, an FCE was ordered to determine whether she was physically able to work. The FCE, performed on August 13, 2010, found that Ms. Alpizar was capable of performing light-duty, sedentary work only on a part-time basis. We find it noteworthy that when Dr. DeLapp released Ms. Alpizar in March 2009, he did state, relative to her right knee, that she may not tolerate being released without restrictions and that an FCE may ultimately be necessary.

On November 22, 2010, Ms. Alpizar saw Dr. Clark Gunderson, an orthopedic surgeon. He recommended a lumbar MRI, a right-knee replacement, and opined that she was incapable of working in any capacity. Ms. Alpizar returned to Dr. Francis on June 16, 2011. Dr. Francis assessed Ms. Alpizar as having "[c]hronic low back and right lower extremity pain" and "right lumbar radiculopathy." He, like Dr. Gunderson in November 2010, recommended "[a]n MRI study of the lumbar spine with and without contrast as well as lower extremity electroneurographic studies[.]"

At trial, Dollar General defended its refusal to authorize Dr. Gunderson's lumbar MRI by asserting that Dr. Francis was Ms. Alpizar's treating physician and that she had been released from his care to return to work on December 17, 2009. It also took issue with the April 2010 prescription from the Newton Family Clinic for Ms. Alpizar to have an FCE because it was signed by a nurse practitioner and not a doctor. Dollar General also contends that Ms. Alpizar voluntarily terminated

3

her employment because, after Dr. Francis released her in December 2009, she did not contact Dollar General about returning to work. Therefore, Dollar General considered the ailments experienced by Ms. Alpizar after December 2009 as being unrelated to her September 2, 2008 work accident. Relative to Ms. Alpizar's request to see Dr. Gunderson, Ms. Alpizar's request was not made until June 2011, seven months after she actually saw him on November 20, 2010. Dollar General argued it was within its rights to deny all requests for treatment made by Ms. Alpizar.

In his extensive oral reasons for judgment, the WCJ ruled in favor of Ms. Alpizar, as set forth in the following significant excerpt:

> Dollar General's view is that it has followed the recommendations of Ms. Alpizar's treating orthopedic surgeons, Drs. DeLapp and Francis, both of whom felt she could return to work with no restrictions. Her visits to Dr. Gunderson, in the employer's opinion, [were] unwarranted and had more to do with her litigation strategy than any valid medical purpose.
>
> Actually, both sides questioned the motives of the physicians who espoused an opposing view. Claimant counsel suggested that Dr. Francis may have caved to pressure from the insurance company, and defense counsel minced few words in suggesting that Dr. Gunderson was selected by Ms. Alpizar's counsel because he could be relied upon to find her disabled.
>
> I find these comments to be mere editorial asides, having little to do with the facts at hand since I have neither the information, insight, nor inclination to gauge a physician's motives.
>
> The fundamental question to be addressed in this case is whether Ms. Alpizar is simply doctor shopping in an effort to avoid full-time employment and cash in on ill-gotten workers' compensation benefits, or whether she is a victim of a bureaucracy that chose to cling to an out-dated diagnosis, completely ignoring the later medical evidence.
>
> Ms. Alpizar presented as a woman who appeared far older than her years, due I suspect to a variety of serious medical conditions including diabetes, emphysema, heart disease and cirrhosis. From

what she said, and from what the record shows, she has worked all of her adult life, mostly in lower-skilled job[s] at low pay.

I am aware of how deceptive appearances can be; however, nothing she said was the least bit suggestive of being cunning or even clever. She is neither articulate nor sophisticated in speech, but she did seem to try, with some strained effort, to explain her position as best she could. She was very persuasive in trying to convince the Court that she did not want to be out of work permanently; rather, she wanted to improve to the point where she could work as many years as possible, given her physical condition.

At no point did she whine, complain, or accuse. My guess is that she was not a particularly easy client for the insurance company to deal with because she did not seem to have a very good grasp on what could have been done to improve her communication somewhat with the adjuster or the doctors. She appeared to be a passive and self-effacing individual, either convinced that the system would somehow work or resigned to the fact that it just may not.

This is not a totally subjective opinion on my part. A timeline showing the events after her injury to the date of trial shows vast gaps, months long in some cases, where absolutely nothing was done to move her recuperation process along.

Defense counsel indicated that the instant litigation was not Ms. Alpizar's idea but that of her lawyer. He is probably right. He is also correct in his assertion that Ms. Alpizar did not go through the correct administrative procedure in seeking to change her orthopedic physician.

But rigid, unbending adherence to administrative procedure is what caused this problem in the first place. There is no question that this employer had in its hand a statement from Dr. Francis that Ms. Alpizar, two months or so from a major spinal surgery, could return to work, presumably to start climbing ladders, loading boxes, stocking shelves, and doing everything she did before her surgery for the same duration at the same pace.

The employer interpreted this particular physician's diagnosis with almost [b]iblical literalness and proceeded straightway to get this employee back to work, doing precisely what she did before she was injured. Later, when the results of a functional capacity examination clearly showed the woman had problems and needed work restrictions, this information seems to have been dismissed out of hand.

When another orthopedic surgeon diagnosed her as needing a complete replacement of her injured knee, the employer's response

was to complain she shouldn't be seeing another doctor in the first place.

Ms. Alpizar candidly told the Court that she changed physicians after an attorney suggested she do so, but her motive for doing so was to find some healthcare provider who would listen to, and perhaps treat her so she can get back to work in some capacity. The employer insists that this change was unreasonable and unnecessary; however, both the functional capacity exam and another experienced orthopedic surgeon found her complaints were valid. It is not at all surprising that a 2009 evaluation of a spinal and knee problem might very well change, especially on a woman in frail health to begin with.

There is no Third Circuit jurisprudence indicating, or even hinting, that a post-surgical evaluation of a patient's condition should not be reconsidered in light of subsequent medical events. It was unreasonable for the employer to do so in this case, and entirely reasonable for Ms. Alpizar to seek other medical assistance when it appeared obvious that the employer was not going to acknowledge, much less treat, her deteriorating knee problem.

I am not sure that I agree with claimant counsel that Ms. Alpizar wanted a new physician because she felt that there was some sort of collusion between the employer and Dr. Francis; I think she was in pain and needed someone to help her.

The FCE should have presented adequate notice to the employer that Ms. Alpizar's original unrestricted return to work diagnosis should be re-examined. It obviously didn't. Dr. Gunderson's opinion that the knee must be replaced should have triggered at least some curiosity in this woman's status. It didn't. When Dr. Francis examined Ms. Alpizar at the request of the employer and was clear in his diagnosis that she had a right lumbar radiculopathy, this might have prompted some interest in taking another look at the case, but it didn't.

Throughout the several years of post-operative degeneration, Dollar General held to its original "back to your regular duties" order as inviolate. While Ms. Alpizar presents the Court with a current report of her medical condition, along with a relatively recent FCE, the employer continues to rely on its original diagnosis, thoroughly dismissing the possibility that change may have occurred.

For these reasons which I trust I have made clear, the Court rules as follows:

The medical evidence shows conclusively that Gina Alpizar cannot perform her pre-injury duties at Dollar General, entitling her to

6

supplemental earnings benefits, based on a zero rate earning capacity, from December 21, 2009[,] forward.

A $2,000.00 penalty is assessed for the employer's failure to reasonably controver [sic] her claim to S.E.B.

Good and sufficient reason has been presented for her request to change orthopedic surgeons from Dr. Francis to Dr. Gunderson.

Her request for a functional capacity examination should have been granted. There was no good reason at all for Dollar General refusing to do so. A $2,00[0.00] penalty is assessed therefor[].

Claimant counsel has presented a fee petition in support of its request in the amount of $13,000[.00]. Given the complexity of this case, along with the conduct of the defendant, this amount appears to be reason[able] and is granted.

Reimbursement of the litigation, FCE, and medically related expenses which are outlined in detail on "Plaintiff Exhibit 21" is hereby also ordered.

Judgment in this matter was signed on May 23, 2013, whereby: (1) Ms. Alpizar was "awarded supplemental earnings benefits, at a zero earning rate, from December 1, 2009 forward"; (2) Ms. Alpizar was "awarded a $2,000.00 penalty for [Dollar General]'s failure to institute SEBs as of December 21, 2009"; (3) Ms. Alpizar's "request for a change in orthopedic surgeons from Dr. Richard Francis to Dr. Clark Gunderson [was] granted"; (4) Ms. Alpizar's "request for a functional capacities evaluation was reasonable"; (5) Dollar General was "assessed a $2,000.00 penalty for failing to grant that request"; (6) "attorney[] fees in the amount of $13,000.00 [were] awarded to [Ms. Alpizar]'s counsel"; and, (7) Ms. Alpizar was "awarded the costs associated with the litigation and the FCE . . . in the total amount of $2,279.89." Dollar General appeals.

## ASSIGNMENTS OF ERROR

Dollar General sets forth four assignments of error:

1.  The trial judge clearly erred in awarding supplemental earnings benefits[.]

2.  The trial judge clearly erred in granting the claimant's request for a change in orthopedic surgeons[.]

3.  The trial judge clearly erred in awarding penalties and attorney[] fees and in finding that defendant did not reasonable [sic] controvert the claimant's claims[.]

4.  The trial judge clearly erred in awarding the costs associated with the litigation and the functional capacities evaluation.

Ms. Alpizar has answered Dollar General's appeal, seeking an additional award of attorney fees for work done on appeal.

## STANDARD OF REVIEW

[F]actual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman*, *supra* at 737-38; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).

*Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, p. 6 (La. 1/9/11), 56 So.3d 170, 174.

## LAW AND DISCUSSION

*Supplemental Earnings Benefits*

Dollar General contends that the WCJ erred in awarding SEB to Ms. Alpizar from December 2009 forward and in awarding the $2,000.00 penalty for its failure to institute SEB. On appeal, Dollar General argues:

There is *no opinion* from any medical doctor that Ms. Alpizar was disabled or restricted from work in any fashion until Dr. Gunderson's litigation opinion of November 22, 2010. The only other evidence of some type of restriction is the FCE of August 13, 2010, but even if that is to be the guiding source for the determination of whether SEBs are owed, those benefits would only be owed from August 2010 forward, not from December 1, 2009.

The law pertaining to SEB was recently set forth by our supreme court in

*Poissenot*, 56 So.3d at 174-75 (footnote omitted):

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221 (3) (a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. *Banks, supra* at 556. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1009 (La.1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.*, 483 So.2d 1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that job was available to the employee in his or the employee's community or reasonable geographic location. La. R.S. 23:1221 (3) (c) (i); *Banks, supra* at 556; *Daigle, supra* at 1009.
>
> The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. *Daigle, supra* at 1007. . . . "In determining whether a [WCJ's] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." *Seal v. Gaylord Container Corp.*, 97-0688 (La.12/2/97), 704 So.2d 1161, 1166.

A review of the record reveals that the WCJ relied upon the trial testimony

of Ms. Alpizar in awarding SEB and a $2,000.00 penalty. At trial, Ms. Alpizar

explained that her duties as assistant manager entailed opening and/or closing the store, mopping, sweeping, handling rolltainers,[2] stocking the shelves with merchandise from the rolltainers, putting up signs, sometimes climbing a ladder in order to stock shelves or hang signs, helping customers, and watching the register. Ms. Alpizar described her September 2, 2008 on-the-job accident to the WCJ, stating:

> It started like any other day. I just -- you know, some guy hollered down the food -- wanted something on the shelf, and I went to help find it; and when I helped him find it, there was an employee -- somebody was wanting to get checked out, so I was working it, too. So, I turned around. Before I knew it, somebody throwed [sic] a box down there at the end cap[,] and I went that way, turned right, and that's when I fell over it.

According to Ms. Alpizar, after the accident, she "did a little bit of light duty [work] for a couple of days[,]" but the manager informed her that Dollar General didn't have light duty work. In December 2008, Dollar General began paying Ms. Alpizar temporary total disability benefits which it terminated in December 2009. Ms. Alpizar offered the August 2010 FCE performed and the November 2010 opinion of Dr. Gunderson to further support her position that she is entitled to SEB from the date of termination, December 2009.

The WCJ found that Ms. Alpizar proved by a preponderance of the evidence that her disability was causally connected to her September 2008 work injury. Dollar General contends that the evidence offered by Ms. Alpizar to establish her entitlement to SEB is insufficient. However, other than Dr. Francis' December 17, 2009 opinion, Dollar General offered no evidence that Ms. Alpizar was not entitled to SEB.

---

[2]Ms. Alpizar described a rolltainer as being "a big caged building with [items] stacked on, groceries, bleach, dog food . . . . It could probably be up to 500 pounds to move it[.]" According to Ms. Alpizar, she would "roll them around in the store."

After a thorough review of the record and relevant jurisprudence, and considering the credibility findings by the WCJ, we find that the extensive oral reasons for judgment adequately explain and support its decision with respect to Ms. Alpizar's entitlement to SEB. The WCJ found no evidence that Dollar General ever offered Ms. Alpizar anything other than "precisely what she did before she was injured." It is evident that the WCJ considered Dr. Francis' December 2009 medical opinion unpersuasive. The WCJ further found Ms. Alpizar credible in her assertions at trial that her knee and back pain made it impossible for her to work. In finding Ms. Alpizar entitled to SEB, it is clear that the WCJ accepted her testimony as to her physical ability, or lack thereof, as well as the findings of the FCE and Dr. Gunderson, which corroborated her claim that she was entitled to SEB due to her inability to earn ninety percent or more of her average pre-injury wage. Thus, we find no manifest error in the WCJ's award of SEB to Ms. Alpizar.

### *Change in Orthopedic Surgeon*

Dollar General also urged that the WCJ erred in finding that Ms. Alpizar was entitled to treatment from Dr. Gunderson. Dollar General particularly took issue with the fact that Ms. Alpizar's formal request was not made until June 2011, seven months after she saw Dr. Gunderson in November 2010. Dollar General contends that it fulfilled the requirements of La.R.S. 23:1121(B)(1), which states "[t]he employee shall have the right to select one treating physician in any field or specialty." Dollar General argues that it fulfilled its statutory obligation under La.R.S. 23:1121(B)(1) since Ms. Alpizar chose to see Dr. Francis, and Ms. Alpizar failed to prove a medical necessity under La.R.S. 23:1203(A) in order for Dollar General to provide her treatment with another physician.

11

An employer's duty to furnish medical expenses is governed by La.R.S. 23:1203(A), which provides, in pertinent part:

> In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.

The WCJ found "good and sufficient reason" for Ms. Alpizar's request to change orthopedic surgeons from Dr. Francis to Dr. Gunderson. Dollar General's challenge of the medical necessity for a change in Ms. Alpizar's orthopedic surgeons is purely argument, not evidence. The evidence, however, reflects that Dr. Francis opined that Ms. Alpizar was able to return to the workforce two months after her back surgery. Further, her request for an FCE was rebuffed by Dollar General, which relied upon the opinion of Dr. Francis. Considering these facts and circumstances, it is both reasonable and understandable that Ms. Alpizar would choose not to return to Dr. Francis and would seek to change her orthopedic surgeon. Hence, we disagree with Dollar General's assertion that the WCJ erred in approving Ms. Alpizar's request for a change in orthopedic surgeon.

As earlier stated, we find the WCJ's extensive oral reasons for judgment adequately explain his decision allowing Ms. Alpizar to change orthopedic surgeons. Accordingly, we find no manifest error in the WCJ's ruling that Ms. Alpizar was entitled to treatment with Dr. Gunderson without approval, even though she had been released to return to work by Dr. Francis.

### Penalties and Attorney Fees

Dollar General contends that the WCJ erred in assessing penalties and attorney fees. Specifically, it argues the WCJ erred in finding that it failed to

12

reasonably controvert Ms. Alpizar's claims and awarding: (1) a $2,000.00 penalty for failing to pay SEB; (2) a $2,000.00 penalty for refusing to authorize the FCE; and, (3) $13,000.00 for attorney fees.

Louisiana Revised Statutes 23:1201(F) authorizes penalties and attorney fees in situations where the employer failed to commence, or recommence, payment of benefits timely, to pay continued installments timely, or to pay medical benefits timely.

> "To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim." *Landry v. Furniture Center*, 05-643, p. 10 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-358 (La.4/28/06), 927 So.2d. 290. Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error. *Kibodeaux v. Cajun Bag & Supply Co.*, 99-149 (La.App. 3 Cir. 6/2/99), 742 So.2d 582.

*Lambert v. Brookshire Grocery Co.*, 06-1001, p. 11 (La.App. 3 Cir. 12/20/06), 945 So.2d 918, 927.

The WCJ found that Dollar General failed to reasonably controvert Ms. Alpizar's requests for SEB and a FCE. Again, the only evidence offered by Dollar General as to why it felt it was within its rights to deny Ms. Alpizar's requests is Dr. Francis' release. Dollar General also argued that Ms. Alpizar's poor health, and not her work-related injuries, was the reason she could not work. Dollar General did not present factual and medical evidence to reasonably controverted Ms. Alpizar's claims. Ms. Alpizar's evidence, particularly the FCE, corroborate her injuries.

After a thorough review of the record and relevant jurisprudence, and considering the credibility findings by the WCJ, we find no manifest error in the

WCJ awarding a $2,000.00 penalty and $13,000.00 in attorney fees for failing to pay SEB and a $2,000.00 penalty for refusing to authorize the FCE.

***Costs of Litigation and the Functional Capacity Evaluation***

The WCJ cast Dollar General with the costs associated with the litigation and the FCE. Dollar General asserts the WCJ erred in awarding reimbursement of the FCE because Ms. Alpizar failed to prove it was medically necessary.

The record reflects that a written demand, dated April 6, 2010, was sent to Dollar General based on the prescription written by Anita Drake, a nurse practitioner at Newton Family Clinic, on April 5, 2010. An authorization from Dollar General was not received; however, Ms. Alpizar had an FCE performed on August 13, 2010. The results substantiated Ms. Alpizar's complaints relative to her back. Dollar General continues to argue that it was error for the WCJ to attribute Ms. Alpizar's inability to work to her September 2008 work accident, and not her poor health, in general. While the medical records and testimony confirm that Ms. Alpizar did have health problems, Dollar General did not prove that her poor health did anything more than exacerbate her inability to work because of her proven injuries. We find no manifest error in WCJ's determination that medical necessity existed and in casting the costs of the FCE being against Dollar General.

Dollar General also asserts the WCJ erred in assessing it with the costs associated with the litigation. An appellate court reviews a WCJ's assessment of court costs under an abuse of discretion standard. *Lambert*, 945 So.2d 918. Given that Ms. Alpizar prevailed on her claims before the WCJ, we find no abuse of discretion in the WCJ's assessment of costs against Dollar General.

*Ms. Alpizar's Answer to Dollar General's Appeal*

Ms. Alpizar requests additional attorney fees for work done on appeal. "The general rule is that an increase in attorney fees is usually allowed where the WCJ awarded a party attorney fees and that party is forced to and successfully defends an appeal, provided that the party properly requests such an increase." *Simpson v. Lafayette Consol. Gov't*, 09-816, p. 10 (La.App. 3 Cir. 2/3/10), 29 So.3d 727, 733, *writ denied*, 10-477 (La. 4/30/10), 34 So.3d 292 (citing *McKelvey v. City of Dequincy*, 07-604 (La.App. 3 Cir. 11/14/07), 970 So.2d 682). Ms. Alpizar was awarded attorney fees by the WCJ. Having affirmed the judgment of the WCJ, we award Ms. Alpizar $3,500.00 in attorney fees for work done on appeal.

## DECREE

Accordingly, for the foregoing reasons, we affirm the May 23, 2013 judgment of the Office of Workers' Compensation in its entirety. Ms. Alpizar is awarded additional attorney fees of $3,500.00 for work performed on this appeal. All costs of this appeal are assessed against Defendant/Employer, Dolgencorp, LLC, doing business as Dollar General.

**AFFIRMED AND RENDERED.**

15