# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 14-156

TRAVIS DAVIS

VERSUS

BOISE CASCADE COMPANY

************

## APPEAL FROM THE
## OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
## PARISH OF RAPIDES, NO. 13-01058
## JAMES BRADDOCK, WORKERS' COMPENSATION JUDGE

************

## JAMES T. GENOVESE
## JUDGE

************

Court composed of Elizabeth A. Pickett, James T. Genovese, and Phyllis M. Keaty, Judges.

**AFFIRMED AND RENDERED.**

Charles W. Farr
1305 W. Causeway Approach, Suite 213
Mandeville, Louisiana 70471
(985) 626-3812
COUNSEL FOR DEFENDANT/APPELLANT:
    Boise Cascade Company

**Maria A. Losavio**
**Losavio Law Office, LLC**
**1821 MacArthur Drive**
**Post Office Box 12420**
**Alexandria, Louisiana 71315-2420**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Travis Davis**

**GENOVESE, Judge.**

In this workers' compensation case, Defendant/Employer, Boise Cascade Company (Boise), appeals the judgment of the Office of Workers' Compensation (OWC) in favor of Plaintiff/Claimant, Travis Davis, finding that Mr. Davis' average weekly wage (AWW) was $704.17, and awarding him a $2,000.00 penalty for Boise's failure to properly calculate temporary total disability benefits (TTD), a $4,000.00 penalty for its discontinuance of TTD, two $2,000.00 penalties for its failure to timely authorize medical treatment, and $15,500.00 in attorney fees. Mr. Davis has answered the appeal relative to the denial of his claim for penalties and attorney fees for Boise's failure to provide vocational rehabilitation and seeks an increase in the penalty awarded for the discontinuance of TTD along with additional attorney fees for work done on appeal. For the following reasons, we affirm the judgment in its entirety, and we render an attorney fee award in favor of Mr. Davis for work done on appeal.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Davis injured his lower back in the course and scope of his employment with Boise on February 10, 2012,[1] while operating a loader at Boise's plywood mill in Florien, Louisiana. At the time of his injury, Mr. Davis, a full-time hourly wage earner, was being paid $15.82 per hour ($23.73 for any overtime hours). Following his accident, Mr. Davis continued working with Boise, performing light-duty work through May 31, 2012. Beginning June 1, 2012, Boise was no longer able to make the necessary light-duty accommodations; therefore, it began paying Mr. Davis TTD at the rate of $507.98. Boise paid Mr. Davis TTD from June 1, 2012, until January 27, 2013, when TTD was terminated based on the

---

[1]The Employer Report of Injury reflects a February 15, 2012 date of accident; however, the parties stipulated that the correct date of injury was February 10, 2012. This error resulted in a recalculation of Mr. Davis' AWW as discussed later in this opinion.

opinion of Dr. Douglas Bernard, an orthopedic surgeon providing a second medical opinion (SMO), that Mr. Davis was able to return to work without restrictions.

Because Dr. Bernard's opinion that Mr. Davis was able to return to work differed from the opinion of Dr. Pierce Nunley, Mr. Davis' treating orthopedist, OWC granted Boise's request for an independent medical examination (IME). Dr. Steven Kautz conducted the IME on April 9, 2013, and opined that Mr. Davis was able to perform light-duty work with some restrictions. Since Boise had not previously extended an offer of light-duty work to Mr. Davis, it reinstated TTD on May 7, 2013, retroactive to January 27, 2013.

There initially being some uncertainty as to the date of injury, the parties agreed that the correct date of injury was February 10, 2012. Therefore, Boise recalculated Mr. Davis' AWW, basing its computation upon the hours Mr. Davis had worked from January 15, 2012, through February 4, 2012. Using this time frame as the four full weeks prior to the date of injury, Boise found that Mr. Davis had worked 157 hours, yielding an average of 39.25 hours per week. Boise's new calculation resulted in an AWW of $632.80 and a corresponding TTD payment of $421.87. Boise continued to pay Mr. Davis benefits at this rate through the date of trial.

During Mr. Davis' receipt of indemnity benefits, issues also arose as to medical treatment. Specifically, Dr. Nunley requested authorizations for a discogram and a total lumbar disc replacement surgery, which were denied on multiple occasions. The factual and procedural background surrounding Dr. Nunley's repeated requests for approval, the repeated denials, the subsequent approvals, and the filing of appeals with both the Medical Director and the OWC is quite extensive. However, ultimately, both requests were approved by Boise and were performed prior to trial.

2

Mr. Davis filed a Disputed Claim for Compensation against Boise and its Third Party Administrator, Sedgwick Claims Service. Following several supplemental and amending pleadings, the parties were able to reach agreements as to some matters in dispute. When the matter proceeded to trial, the remaining issues included the correct calculation of AWW, the discontinuance of TTD from January 27, 2013, through May 7, 2013, the denial of the discogram, the denial of the lumbar surgery, the alleged failure to provide proper vocational rehabilitation, and penalties and attorney fees.

Following a trial on the merits, the WCJ determined that Mr. Davis' AWW was $704.17 resulting in a TTD payment of $469.45, and Boise was ordered to pay TTD at this rate retroactive to June 1, 2012. On Mr. Davis' claims for penalties and attorney fees, Mr. Davis was awarded a $2,000.00 penalty for Boise's failure to pay TTD at the correct rate, a $4,000.00 penalty for its discontinuance of TTD on January 27, 2013, a $2,000.00 penalty for its failure to timely authorize the discogram, a $2,000.00 penalty for its failure to authorize the lumbar surgery, and $15,500.00 in attorney fees. Finally, Mr. Davis' claim for penalties and attorney fees for Boise's alleged failure to provide vocational rehabilitation was denied. A judgment in accordance therewith was signed on November 12, 2013. From said judgment, Boise appeals, and Mr. Davis has answered the appeal.

## ASSIGNMENTS OF ERROR

Boise presents the following assignments of error for our review:

### Assignment of Error #1

In light of the legislative declaration that the workers' compensation laws are not to be construed in favor of either party, it was error for the workers' compensation judge to consider wages of an hourly employee beyond the four full weeks preceding the accident when calculating the AWW pursuant to [La.R.S. 23:1021(12)(a)].

3

**Assignment of Error #2**

Appellant based its calculation of claimant's AWW on the wording of the statute which provides the method for calculating the AWW of a full[-]time hourly worker. Considering that claimant argued alternative methods for calculating his AWW, it was error for the workers' compensation judge to award penalties and attorney[] fees simply because he did not agree with appellant's calculation.

**Assignment of Error #3**

When the decision to terminate claimant's temporary total disability benefits was based on the opinion of an orthopedic surgeon that claimant could return to work without restrictions, and appellant made an offer to claimant to return to work, which claimant did not accept, it was error for the worker's compensation judge to award penalties and attorney[] fees for the alleged wrongful termination of benefits.

**Assignment of Error #4**

Appellant's decision to file a Form 1009 appeal of a [utilization review (UR)] determination that the discogram was medically necessary was based on a reasonable belief that it was an "aggrieved party," as defined in [La.R.S. 23:1203.1]. Where the delay in approving the discogram resulted from appellant's decision to argue an unresolved issue of law, it was error for the workers' compensation judge to award penalties and attorney[] fees for the failure to timely authorize the discogram.

**Assignment of Error #5**

Appellant's decision to file a Form 1009 appeal of a UR determination that lumbar disc replacement surgery was medically necessary was based on a reasonable belief that it was an "aggrieved party," as defined in [La.R.S. 23:1203.1]. Where the delay in approving surgery resulted from appellant's decision to argue an unresolved issue of law, it was error for the workers' compensation judge to award penalties and attorney[] fees for the failure to timely authorize the surgery.

In his answer to appeal, Mr. Davis seeks an increase in attorney fees for appellate work. Additionally, he presents the following assignments of error for our review:

1. The trial judge erred in denying Travis Davis' request for penalty and attorney[] fees for the employer/defendant Boise Cascade Company's failure to provide proper vocational rehabilitation[.]

4

**2.** The trial court erred in only awarding [a] $4,000[.00] penalty instead of the maximum $8,000[.00] penalty in accordance with [La.R.S.] 23:1201(I) for employer/defendant Boise Cascade Company's discontinuance of TTD on January 27, 2013[.]

## LAW AND DISCUSSION

*Calculation of AWW*

In its first assignment of error, Boise asserts error by the WCJ in considering wages of Mr. Davis, a full-time hourly employee, beyond the four full weeks preceding his accident when calculating the AWW. We disagree.

As a full-time, hourly employee, the calculation of Mr. Davis' AWW is governed by La.R.S. 23:1021[2] which provides:

> (12) "Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
>
> **(a) Hourly wages.**
>
> (i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater[.]

In this case, the parties stipulated that at the time of the accident, Mr. Davis was earning $15.82 per hour. In the weeks preceding the accident, Mr. Davis worked as follows: January 8–14, 2012 (forty hours); January 15–21, 2012 (thirty-three hours); January 22–28, 2012 (forty hours); and, January 29–February 4, 2012 (forty-four hours).

The dispute concerning the correct calculation of Mr. Davis' AWW centers on the exclusion of the week beginning January 15, 2012. Undisputedly, Mr. Davis did not work a full shift on January 16, 2012, due to a power outage which resulted in the employees being sent home. The WCJ found that because Mr. Davis did not work a full shift on January 16, 2012, the week beginning

---

[2]Although the language has not changed, this provision now appears at La.R.S. 23:1021(13)(a)(i).

5

January 15, 2012 was not to be included in the calculation of AWW because it was not a "full week." Therefore, the WCJ included the prior week in the calculation and arrived at an AWW of $704.17.[3]

Boise argues that the WCJ's interpretation runs afoul of La.R.S. 23:1020.1(D)(2) which provides:

> Disputes concerning the facts in workers' compensation cases shall not be given a broad, liberal construction in favor of either employees or employers; the laws pertaining to workers' compensation shall be construed in accordance with the basic principles of statutory construction and not in favor of either employer or employee.

We disagree, noting first that the dispute on this issue does not concern the "facts" in this case. Rather, the WCJ considered the undisputed facts and then applied those facts to the express wording of "four full weeks" as used in La.R.S. 23:1021(12)(a)(i).

Statutory interpretation presents a question of law. When a decision of a WCJ presents a question of law, the standard of review to be applied by an appellate court is to determine whether the ruling is legally right or wrong. *Magbee v. Fed. Express*, 12-77 (La.App. 3 Cir. 12/12/12), 105 So.3d 1048 (citing *LeBlanc v. Lafayette Consol. Gov't*, 07-1608 (La.App. 3 Cir. 5/28/08), 983 So.2d 1022).

In applying La.R.S. 23:1021(12)(a)(i), the WCJ concluded that when, as in the case of Mr. Davis, "one of the immediate four weeks prior to the week of his injury there was one day that he reported to work and he worked only one hour . . . at a safety meeting, but he did not work his regular job because of a power failure[,]" that week is not to be included in the AWW calculation.[4]

---

[3]As explained above, Boise computed Mr. Davis' AWW by multiplying his hourly pay of $15.82 by 40 hours (given he averaged 39.25 hours per week) to yield an AWW of $632.80. Boise maintains that their interpretation of "four full weeks" as "four full calendar weeks" was correct.

6

We find no error in the WCJ's exclusion of the week of January 15, 2012, in the calculation of Mr. Davis' AWW since that week did not constitute a "full week" due to the plant's power outage resulting in Mr. Davis not working a full day on January 16, 2012. Accordingly, the WCJ's calculation of Mr. Davis' AWW and, necessarily, the corresponding TTD, is affirmed.

*Penalties and Attorney Fees—Calculation of AWW*

In its second assignment of error, Boise contends that the WCJ erred in awarding Mr. Davis a $2,000.00 penalty for its erroneous calculation of AWW since it "reasonably controverted" the claim in accordance with La.R.S. 23:1201(F)(2). We disagree.

Louisiana Revised Statutes 23:1201(emphasis added) provides, in pertinent part:

> F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:
>
> . . . .

---

[4]In support of his reasoning, the WCJ cited *Henry v. Bolivar Energy Corp.*, 95-1691 (La.App. 3 Cir. 6/5/96), 676 So.2d 681, *writ denied*, 96-1749 (La. 10/11/96), 680 So.2d 644, *Haynes v. Williams Fence & Aluminum*, 01-26 (La.App. 3 Cir. 7/25/01), 805 So.2d 215, and *Hargrave v. State, DOTD*, 10-1044 (La. 1/19/11), 54 So.3d 1102.

(2) **This Subsection shall not apply if the claim is reasonably controverted** or if such nonpayment results from conditions over which the employer or insurer had no control.

Boise argues that it reasonably controverted the claim based upon the wording of the statute and that its reasonableness is evidenced by the fact that Mr. Davis himself offered alternative calculations. In response, Mr. Davis points out that Boise's calculation error was actually twofold. He notes that not only did Boise fail to use the four full weeks prior to the date of the accident in its computation of his AWW, it also failed to multiply the overtime hours he worked during that time period by the hourly wage rate earned for overtime hours (time and a half). Mr. Davis concludes that "[e]ither or both of these miscalculations warranted the imposition of a $2,000[.00] penalty plus attorney[] fees and back due benefits with the correct rate."

The decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review. *Authement v. Shappert Eng'g*, 02-1631 (La. 2/25/03), 840 So.2d 1181. Given the facts surrounding Boise's erroneous calculation, and considering the standard of review to be applied by this court, we find that a reasonable factual basis exists for the WCJ's penalty award for the improper calculation of AWW; thus, this award is affirmed.

*Penalty and Attorney Fees—Termination of TTD*

In its third assignment of error, Boise contends that the WCJ erred in assessing a $4,000.00 penalty for its discontinuance of TTD on January 27, 2013. On the contrary, Mr. Davis asserts in his answer to appeal that the WCJ erred in only awarding $4,000.00 instead of the maximum penalty of $8,000.00 provided by La.R.S. 23:1201(I).

8

Louisiana Revised Statutes 23:1201(emphasis added) provides, in pertinent part:

> I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, **when such discontinuance is found to be arbitrary, capricious, or without probable cause**, shall be subject to the payment of a penalty **not to exceed eight thousand dollars** and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:1892(C) shall be applicable to claims arising under this Chapter.

Boise maintains that its actions do not merit a finding of "arbitrary, capricious, or without probable cause" to warrant the imposition of a penalty for its discontinuance of TTD. Relying on the SMO report of Dr. Bernard, Boise argues that "[t]he law does not authorize an award of penalties and attorney[] fees where the employer's decision to deny payment of benefits is based on the opinion of a doctor who discharged the claimant to return to work." Boise contends that it actually went further than simply relying on Dr. Bernard's opinion by requesting an IME to settle the difference in opinions of Dr. Nunley and Dr. Bernard. Boise concludes that when it learned that Dr. Kautz only released Mr. Davis to light duty, it reinstated benefits "further solidifying Boise's contention that its decision was neither arbitrary nor capricious, but made with careful consideration and regard to the facts and circumstances of the case."

While we agree that an employer's decision to terminate benefits based upon a physician's opinion that the claimant can return to work may preclude the imposition of a penalty for such termination, this does not end the inquiry. Rather, an "employer has a continuing duty to gather factual and/or medical information in its investigation of the employee's workers' compensation claim." *Celestine v. Firestone Polymers, L.L.C.*, 09-1534, p. 14 (La.App. 3 Cir. 5/5/10), 38 So.3d 527,

538, *writ denied*, 10-1237 (La. 9/17/10), 45 So.3d 1055. "An employer avoids the imposition of penalties and attorney[] fees by satisfying its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits." *Lafayette Steel Erector, Inc., v. Constance*, 13-1367, pp. 13-14 (La.App. 3 Cir. 4/16/14), 137 So.3d 1251, 1262 (quoting *Odom v. Kinder Nursing Home*, 06-1442, p. 24 (La.App. 3 Cir. 4/25/07), 956 So.2d 128, 141). As argued by Mr. Davis, considering the continuing duty of an employer, "even if" Boise was justified in relying on Dr. Bernard's opinion when it initially terminated TTD, it could not continue to do so without incurring liability, considering the new medical information which it was given and which it did not provide to Dr. Bernard. Additionally, the adjuster could not simply ignore "Boise's policy of not allowing Mr. Davis to return to work where there was an ongoing dispute among the physicians as to his work capacity."

The WCJ agreed with Mr. Davis, finding that from the time TTD was terminated until its reinstatement that Boise "had ample information, competent medical evidence that established Mr. Davis was incapable of working a full-duty job based primarily on the discogram study and the opinion of Dr. Kautz[.]" Considering the information available to Boise, the WCJ found that "[a]ll of this supports the conclusion of Dr. Nunley prior to [Boise's] termination of benefits January 27th of 2013[,] that Mr. Davis was incapable of working." Thus, it was the finding of the WCJ that the termination was arbitrary and capricious warranting the imposition of a penalty.

Based upon these facts, we find that a reasonable factual basis exists for the WCJ's penalty award for Boise's discontinuance of TTD. Having so concluded, we must next address Mr. Davis' contention that the WCJ erred in only awarding

$4,000.00 instead of the maximum penalty of $8,000.00 provided by La.R.S. 23:1201(I).

Although a WCJ's decision to impose penalties is a factual finding subject to the manifest error standard of review, a "WCJ's award of penalties and attorney fees, that is the actual amount awarded, is entitled to great discretion and will not be disturbed absent an abuse of that discretion." *Williams v. Tioga Manor Nursing Home*, 09-417, p. 22 (La.App. 3 Cir. 11/18/09), 24 So.3d 970, 984, *writ denied*, 10-298 (La. 4/9/10), 31 So.3d 389 (citing *Int'l Maint. Corp. v. Stoddard*, 05-676 (La.App. 3 Cir. 12/30/05), 918 So.2d 1077). Considering the facts of this case, we do not find the award of $4,000.00 to be abusively low. Accordingly, we affirm that portion of the judgment awarding Mr. Davis a $4,000.00 penalty for the discontinuance of TTD.

*Penalties and Attorney Fees—Failure to Timely Authorize Medical Treatment*

Although identified as two different assignments of error, in brief, Boise states that its "arguments against the assessment of penalties and attorney[] fees in connection with the discogram and surgery disputes are one and the same and will be briefed together." Likewise, we will consider Boise's assignments of error numbers four and five together.

On the failure to authorize the requested medical treatment, Boise argues that it "reasonably believed that it was 'an aggrieved party' for purposes of [La.R.S. 23:1203.1(J)] and [that it] had a right to file a Form 1009 appeal, even though the treatment was deemed to be medically necessary." Therefore, it concludes that it may not be assessed with a penalty under La.R.S. 23:1201 for its failure to timely authorize requested medical treatment.

Louisiana Revised Statutes 23:1203.1(emphasis added) provides:

11

J. (1) After a medical provider has submitted to the payor the request for authorization and the information required by the Louisiana Administrative Code, Title 40, Chapter 27, the payor shall notify the medical provider of their action on the request within five business days of receipt of the request. If any dispute arises after January 1, 2011, as to whether the recommended care, services, or treatment is in accordance with the medical treatment schedule, or whether a variance from the medical treatment schedule is reasonably required as contemplated in Subsection I of this Section, **any aggrieved party** shall file, within fifteen calendar days, an appeal with the office of workers' compensation administration medical director or associate medical director on a form promulgated by the director. The medical director or associate medical director shall render a decision as soon as is practicable, but in no event, not more than thirty calendar days from the date of filing.

As stated above, the requested discogram and lumbar surgery were the subjects of much debate. The requests for each of these procedures resulted in denials, utilization reviews, and, ultimately, consideration by the Medical Director on more than one occasion. The Medical Director first concluded that these procedures were not medically necessary and, thereafter, concluded that that they each were medically necessary. For each of these decisions of the Medical Director finding the requested treatment to be medically necessary, Boise filed a Form 1009 appeal. In response to each Form 1009 appeal, counsel for Mr. Davis objected, asserting that Boise was not an "aggrieved party" who could appeal pursuant to La.R.S. 23:1203.1. In fact, both of Boise's Form 1009 appeals were rejected by the OWC Director on these grounds. Finally, Boise filed a Form 1008 appeal seeking a review by the WCJ of the rejection of its Form 1009 appeal.

Boise argues that "[t]o this day, there is no known decision by any Louisiana appellate court seeking to define who is or is not an 'aggrieved party' under [La.R.S. 23:1203.1(J)]." It argues that it had the right to file a Form 1009 appeal, and it was error of the WCJ to impose a penalty against it for failing to timely authorize the requested medical treatment since it "cannot be penalized for taking a close factual or legal issue to court for resolution."

In response, Mr. Davis points out that Sedgwick's UR department had actually made a decision January 24, 2013, finding the request for the discogram to be medically necessary and in compliance with the medical treatment guidelines. Mr. Davis argues that "[d]espite Sedgwick's own UR department's approval, the adjuster denied the lumbar discogram on [January 28, 2013] . . . without any medical or legal basis for same." Similarly, Mr. Davis argues that despite the April 8, 2013 decision of Sedgwick's UR department finding the treatment request for the lumbar surgery to be medically necessary and in accordance with the medical treatment guidelines, "[y]et again, the adjuster overruled the UR department and denied the lumbar surgery" on April 9, 2013.

Mr. Davis further notes that when Boise filed its Form 1009 appeal relative to the surgery, its Form 1009 appeal regarding the discogram had already been rejected. In fact, the adjuster admitted in her deposition that nothing had changed since Boise had tried to file the Form 1009 appeal two months earlier which would allow another filing. Mr. Davis argues that Boise chose to proceed in this manner as a delay tactic. Even thereafter, instead of approving the surgery, Boise then filed a Form 1008 appeal, seeking a review by the WCJ. Following the hearing, the surgery was still not approved, resulting in yet additional requests by Dr. Nunley for approval of the lumbar surgery, which were again denied. It was not until Mr. Davis filed his own Form 1009 appeal and the Medical Director's approval of the surgery on July 3, 2013, that Mr. Davis had the surgery performed in August of 2013.

With respect to the denial of the discogram, the WCJ concluded that Boise failed to reasonably controvert the request in light of the "competent evidence from Dr. Nunley of the need for the discogram, as well as competent evidence from the UR company of the medical necessity pursuant to the medical treatment schedule

13

for the discogram." The WCJ found that Boise's denial based upon a normal MRI "ignored the opinion of Dr. Nunley that there was not a normal MRI, that there was an annular tear of L4-5."

Considering what transpired relative to the request for the lumbar surgery, the WCJ noted that when it was requested in April 2013, Sedgwick's UR department found that it was medically necessary. Despite this, the adjuster denied the request and filed the Form 1009 appeal with the Medical Director. Further, specifically addressing the rejection of Boise's Form 1009 appeal, the WCJ pointed out that new medical information was available following the hearing on the issue of Boise being an "aggrieved party," and Boise still failed to act. Thus, the WCJ concluded that Boise "possessed no competent evidence to reasonably controvert the decision of Dr. Nunley or the opinion of its own medical review company," thereby warranting the imposition of a penalty.

Based upon the foregoing, we find that a reasonable factual basis exists to support the WCJ's penalty awards for Boise's failure to timely authorize the requested medical treatment. Therefore, those portions of the judgment awarding Mr. Davis a $2,000.00 penalty for the failure to timely authorize the discogram and the $2,000.00 penalty for the failure to timely authorize the lumbar surgery are affirmed.

### Penalties and Attorney Fees—Failure to Provide Vocational Rehabilitation

In his answer to appeal, Mr. Davis asserts that the WCJ erred in failing to award him a penalty and attorney fees for Boise's failure to provide vocational rehabilitation. We find no merit to this contention.

On this issue, the WCJ determined that whether or not a claimant may be entitled to a penalty for an employer's failure to institute vocational rehabilitation

14

"appears to be at the present time an unsettled question."[5]  Considering the strict construction to be given to the penalty statutes,[6] and given the conflict between the courts, the WCJ held that "this was a legitimate issue for litigation" and declined to award Mr. Davis a penalty on this claim, "remembering all along that Mr. Davis is contending that he's totally incapable of working."

We conclude that the WCJ was not manifestly erroneous in its denial of this penalty claim; thus, the portion of the judgment denying Mr. Davis' request for a penalty concerning Boise's failure to provide vocational rehabilitation is affirmed.

### Additional Attorney Fees

Lastly, Mr. Davis seeks an award of attorney fees for the work necessitated by this appeal.  "'The general rule is that an increase in attorney fees is usually allowed where the WCJ awarded a party attorney fees and that party is forced to and successfully defends an appeal, provided that the party properly requests such an increase.'" *Alpizar v. Dollar General*, 13-1150, p. 15 (La.App. 3 Cir. 3/5/14) 134 So.3d 99, 109 (quoting *Simpson v. Lafayette Consol. Gov't*, 09-816, p. 10 (La.App. 3 Cir. 2/3/10), 29 So.3d 727, 733, *writ denied*, 10-477 (La. 4/30/10), 34 So.3d 292).  In the case at bar, Mr. Davis was awarded attorney fees by the WCJ and has requested an increase in attorney fees in his answer to appeal.  Having affirmed the judgment of the WCJ, we award Mr. Davis $3,500.00 in attorney fees for work done on appeal.

### DECREE

For the reasons assigned, the judgment of the trial court in favor of Travis Davis is affirmed.  Mr. Davis is awarded additional attorney fees of $3,500.00 for

---

[5]The decisions of *Massingill v. Dunham Price Group, L.L.C.*, 09-1549 (La.App. 3 Cir. 5/5/10), 38 So.3d 498, and *Lewis v. Temple Inland*, 11-729, 11-730 (La.App. 1 Cir. 11/9/11), 80 So.3d 52, were referred to by the WCJ in his oral reasons.

[6]See *Williamson v. Liberty Mut. Ins. Co.*, 12-148 (La.App. 3 Cir. 6/6/12), 92 So.3d 1218 (citing *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41).

15

work performed on this appeal.  Costs of this appeal are assessed to Boise Cascade

Company.

      **AFFIRMED AND RENDERED.**