# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-816

JOSEPH SIMPSON

VERSUS

LAFAYETTE CONSOLIDATED GOVERNMENT

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 03-06742
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

************

## DAVID E. CHATELAIN[*]
## JUDGE

************

Court composed of Oswald A. Decuir, Jimmie C. Peters, and David E. Chatelain, Judges.

## AFFIRMED. ANSWER TO APPEAL DENIED.

Mark A. Ackal
Attorney at Law
Post Office Box 52045
Lafayette, Louisiana 70505-2045
(337) 237-5500
Counsel for Defendant/Appellant:
    Lafayette Consolidated Government

Daniel J. Dazet
Dazet & Associates
207 Florida Street
Baton Rouge, Louisiana 70801
(225) 383-2667
Counsel for Plaintiff/Appellee:
    Joseph Simpson

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**CHATELAIN, Judge Pro Tempore.**

In this workers' compensation matter, Lafayette Consolidated Government (LCG) appeals a judgment the workers' compensation judge (WCJ) rendered in favor of its employee, Joseph Simpson. Mr. Simpson answers the appeal seeking an award of attorney fees due to the handling of this appeal. For the following reasons, we affirm the judgment but decline to award Mr. Simpson attorney fees on appeal.

## FACTS AND PROCEDURAL HISTORY

Mr. Simpson was injured in the late morning of October 3, 2002, when he was blown off the steps of a temporary trailer and thrown to the ground during Hurricane Lili. He was working as an Engineer Specialist 1 at the time, and his duties included checking the five major pump stations in the City of Lafayette during severe weather to ensure that they were operational and functioning properly. Mr. Simpson testified that as he was exiting the trailer which housed his office, a "strong gust of wind took [him], and the door just flung [him]," causing him to fall down four or five steps and hit the ground, landing on his knees. After he was unable to get up on his own, about eight of his co-workers carried him back into the trailer. An ambulance was called but could not come out because the weather conditions were too bad; therefore, his co-workers transported him to the emergency room (the ER) at Lafayette General Medical Center.

Dr. Angela Mayeux, an orthopaedic surgeon, treated Mr. Simpson in the ER. He complained of pain to both knees at the time of his admission. Within a week of the accident, Dr. Mayeux performed surgery on his left knee to repair a tear to his patellar tendon. Mr. Simpson attended physical therapy for approximately six months. Dr. Mayeux performed a second surgery on Mr. Simpson in August of 2004

1

to remove scar tissue from his left knee. Dr. Mayeux referred Mr. Simpson to Dr. Joseph Gillespie for pain management in May of 2005. At the time of trial, Mr. Simpson was still under the care of Dr. Gillespie.

At the urging of LCG, Mr. Simpson saw Dr. Michael Duval, an orthopaedic surgeon, for a second opinion on September 5, 2003. He was seen by Dr. Sandra Weitz, a pain management specialist, for a second opinion in October 2005. LCG sent Mr. Simpson to Dr. Wayne Lindermann, a physical rehabilitation physician, for a second opinion in February of 2006. Later, in August of 2006, LCG sent Mr. Simpson to Dr. Malcolm Stubbs, an orthopedist, for an independent medical examination (IME).

Mr. Simpson filed a Disputed Claim for Compensation on September 17, 2003, asserting that his wage benefits had been wrongfully terminated in August 2003 and requesting that he be allowed to seek treatment of his choice of pain specialist. On March 20, 2006, LCG filed a reconventional demand, asserting that Mr. Simpson was no longer temporarily totally disabled. It averred that he was capable of full-time, sedentary work and thus no longer entitled to indemnity benefits because he had refused to work at the modified, sedentary position LCG offered. In addition, LCG claimed that the medical treatment Dr. Gillespie currently provides is not reasonable and necessary.

At the July 22, 2008 trial, the parties stipulated that Mr. Simpson suffered an accident on October 3, 2002, that occurred within the course and scope of his employment with LCG. They further stipulated as to Mr. Simpson's average weekly wage and that he had received weekly indemnity benefits through the date of trial. Finally, they stipulated that LCG relied on the medical opinion of Mr. Simpson's

2

treating physician, Dr. Mayeux, in denying treatment relative to his right knee. At the close of the testimony, the matter was taken under advisement. Oral reasons for judgment were rendered on December 17, 2008. Therein, the WCJ found that Mr. Simpson sustained an accident within the course and scope of his employment on October 3, 2002, which caused him injuries, including an injury to his right knee, thus making that injury compensable under the workers' compensation statute. The WCJ denied LCG's reconventional demand on the basis of its determination that LCG's efforts to find Mr. Simpson suitable employment with regard to his disability were not fitted to his restrictions. Nevertheless, the WCJ directed Mr. Simpson to cooperate with any efforts LCG made to help him wean himself from narcotic medication. Written judgment was rendered on March 16, 2009.

LCG now appeals, claiming that the following findings made by the WCJ are not supported by the record and are manifestly erroneous, thus requiring reversal: (1) Mr. Simpson sustained personal injury to his right knee as a result of an accident arising out of and in the course of his employment with LCG; (2) Mr. Simpson is entitled to temporary total disability benefits (TTDs) and/or supplemental earnings benefits (SEBs); (3) LCG's efforts to find Mr. Simpson suitable employment with regard to his disability were not fitted to his restrictions; and, (4) Mr. Simpson is entitled to the narcotic pain medication Dr. Gillespie prescribed.

## DISCUSSION

The Louisiana Supreme Court set out the standard of review employed in workers' compensation cases in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted):

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In

3

applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1). A worker's testimony alone may be sufficient to meet his burden of proving that a work-related accident occurred and that an injury was sustained, "provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bruno*, 593 So.2d at 361. In determining whether the worker has met his burden of proof, the workers' compensation judge "should accept as true a witness's uncontradicted testimony, although the witness is a party, absent 'circumstances casting suspicion on the reliability of this testimony.'" *Id*. (citations omitted).

The determinations by a workers' compensation judge "as to whether the worker's testimony is credible and whether the worker has discharged his . . . burden of proof are factual determinations not to be disturbed on review unless clearly wrong

or absent a showing of manifest error. *Id.* Moreover, the factual findings of a workers' compensation judge are entitled to great deference on appellate review. *Hebert v. C.G. Logan Constr., Inc.*, 06-612 (La.App. 3 Cir. 11/2/06), 942 So.2d 77.

**Did Mr. Simpson injure his right knee in the October 3, 2002 accident, thus entitling him to benefits under the workers' compensation statute?**

LCG insists that Mr. Simpson failed to prove a causal connection between his October 2002 accident and his right knee pain. It admits that while Mr. Simpson did complain of pain in both knees to Dr. Mayeaux when she first treated him in the ER following the accident, her notes contained no mention of right knee pain for the next seventeen months. It points to correspondence from Dr. Mayeaux dated June 2, 2004, in which she stated that Mr. Simpson's "current complaints of right knee pain were more likely than not unrelated to his accident of October 3rd 2002." LCG refers to the August 2006 orthopaedic evaluation Dr. Stubbs prepared when he provided an IME to Mr. Simpson, wherein he stated that the MRI of Mr. Simpson's right knee is "very much inconclusive" and that he did not feel that surgery to Mr. Simpson's right knee was warranted at the time. LCG adds that there is no mention of any right knee pain in any of the notes documenting Mr. Simpson's seventy-one physical therapy sessions. Finally, LCG refers to an Employee's Report of Job Injury completed by Mr. Simpson nineteen days after his accident where he listed injuries to his left knee, left leg, lower back, and hip with no mention of injury to his right knee.

To the contrary, Mr. Simpson argues that LCG ignores that legal causation and medical causation are two different concepts and that medical evidence should not be relied upon to the exclusion of all other relevant evidence when determining whether an injury is compensable under the workers' compensation statute. Mr. Simpson relies on *Hammond v. Fidelity & Casualty Co. of New York*, 419 So.2d 829, 832-33

5

(La.1982) (footnote omitted), wherein the supreme court explained the difference between the concepts of legal causation and medical causation, stating:

> [The lower courts] failed to distinguish the "medical" meaning of cause from the "legal" meaning of cause. When the doctors speak of cause they are essentially speaking of etiology—the origin of disease; what initially causes a disease. When courts and lawyers speak of cause they are concerned with the question of whether the particular incident in question contributed to the plaintiff's disability by making manifest symptoms previously unnoticed. "Causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence." *Haughton v. Fireman's Fund American Insurance Companies*, 355 So.2d 927, 928 (La.1978).

In determining that the treatment to Mr. Simpson's right knee was compensable under the workers' compensation statute, the WCJ was persuaded by Mr. Simpson's testimony that he injured both knees in the October 3, 2002 accident, but because his left knee had been more critically injured, the majority of the medical attention had been focused on it. The WCJ noted that Mr. Simpson testified that the problems with his right knee had increased with the passage of time. The WCJ agreed with Mr. Simpson's argument that, given his size[1] and the fact that he was "literally blown down the steps by the winds during a hurricane," it was certainly plausible that he injured his right knee in the 2002 accident. In his reasons for judgment, the WCJ stressed that Mr. Simpson never had any problems with his right knee prior to the 2002 accident, but there are documented complaints regarding his right knee after the accident.

In *Freeman v. Best Western Richmond Suites Hotel*, 97-1462, p. 11 (La.App. 3 Cir. 4/22/98), 711 So.2d 438, 443, *writ denied*, 98-1393 (La. 7/2/98), 724 So.2d 737 (citations omitted), this court wrote:

---

[1]In response to questioning by the WCJ, Mr. Simpson testified that he weighed approximately 250 pounds at the time of the accident.

> It is also important to note that an employee's work-related accident is presumed to have caused his disability when it is proven that the disabling symptoms were not manifested before the accident, the disabling symptoms appeared after the accident, and there is either medical or circumstantial evidence providing a reasonable possibility of causal connection between the accident and disabling injury. Although, the claimant has the burden of proving that the accident somehow caused or contributed to the disability, the exact cause need not be found. Additionally, the question of the existence of a disability presents a legal and not purely medical question, which must be determined through a consideration of both lay and medical testimony.

The applicable standard of review dictates that we accord great deference to the WCJ's findings of fact and reasonable evaluations of credibility. Given the totality of the evidence presented, including the initial report of a right knee injury, the surgical treatment of Mr. Simpson's left knee injury, and the attendant pain management, we find no error in the WCJ's finding that Mr. Simpson injured his right knee in the October 2002 work-related accident.

### Is Mr. Simpson entitled to TTDs and/or SEBs? Did LCG prove that it found Mr. Simpson suitable employment with regard to his disability?

LCG insists that Mr. Simpson did not meet his burden of proving that he has an ongoing temporary/total disability or that he was physically unable to engage in any employment. According to LCG, all of the physicians who evaluated Mr. Simpson opined that he was capable of performing full-time, sedentary work as of August 2006 at the latest. Moreover, LCG submits that it bent over backwards to accommodate Mr. Simpson and to comply with the restrictions Dr. Gillespie placed upon his employment, but that Mr. Simpson refused to return to his job. In addition, LCG argues that with the help of Ms. Zelda Lagrange, a vocational rehabilitation counselor, Mr. Simpson was made aware of two medically-approved jobs, both of which he declined. Accordingly, LCG avers that the WCJ erred in concluding that

Mr. Simpson was entitled to TTDs and/or SEBs and in concluding that it did not offer Mr. Simpson employment fitted to his restrictions.

Mr. Simpson counters that the record fully supports the WCJ's findings that he was not provided with a job consistent with the restrictions Dr. Gillespie provided and thus entitled to ongoing indemnity benefits. While Mr. Simpson does not dispute that LCG "made a valiant effort" to accommodate his return to employment, he submits that the evidence shows that he likewise attempted to return to his job at LCG, but his efforts were thwarted by his physical inability to meet the requirements placed upon him. As a result, Mr. Simpson submits that while commendable, the accommodations made by LCG to put him back to work fell short.

In March 2006 correspondence written to provide clarification on the work restrictions that he had placed on Mr. Simpson, Dr. Gillespie stated that Mr. Simpson could perform "a sedentary level at a self-paced level of activity," adding that "[i]f you require anything more rigid then it is no longer self-paced." Dr. Gillespie additionally directed that "self-pace can vary from day-to-day, week-to-week, hour-to-hour." His advice to LCG was that it "pay [Mr. Simpson] by the job, let him do it at home, and avoid this unnecessary turmoil." In ruling in favor of Mr. Simpson with regard to his claim for continuing indemnity benefits, the WCJ found that the phrase "self-paced employment" had "been stretched . . . to its limits by both sides," leading each "to proceed with their own self-serving definition" of the phrase. Noting that the vocational rehabilitation counselor worked on behalf of the employer, the WCJ found that the "lack of essential clarity" with regard to the restrictions placed on Mr. Simpson's return to work by his treating physician was "scarcely the fault" of Mr. Simpson. As a result, the WCJ found that LCG's efforts to find suitable

8

employment for Mr. Simpson with regard to his disability were not fitted to his restrictions.

We have thoroughly examined the record. Although there is contradicting evidence with regard to Mr. Simpson's right to continue to receive indemnity benefits, we conclude that the WCJ clearly articulated a reasonable basis for its decision to rule in favor of Mr. Simpson given the dispute over the meaning of the restrictions placed on his ability to return to employment, and we cannot say that such finding is manifestly erroneous or clearly wrong.

### *Is Mr. Simpson entitled to the narcotic pain medication prescribed by Dr. Gillespie?*

LCG argues that Mr. Simpson failed to prove that his continued use of the short-acting, narcotic pain medication Dr. Gillespie prescribed is reasonable and necessary. It submits that all of the physicians who evaluated Mr. Simpson, other than Dr. Gillespie, opined that he should be prescribed long-acting, less sedating, pain medication.

Mr. Simpson acknowledges that the majority of the physicians involved in this matter agree that his pain medications should be changed. Nevertheless, he submits that there has been no actual change in his treatment protocol to affect such a change and that the WCJ was correct in finding that a court is not the proper venue to pursue such a change in medical treatment.

In denying LCG's request for a ruling that Mr. Simpson was no longer entitled to the narcotics Dr. Gillespie prescribed, the WCJ stated that while he had no intention of ordering a treating physician to modify Mr. Simpson's pain medication, he would order Mr. Simpson to cooperate with any efforts LCG made to facilitate his being weaned off narcotic medication.

We find no error in the WCJ's refusal to alter Mr. Simpson's medication, despite the overwhelming evidence that it is detrimental to him to continue taking narcotic medications. Obviously, if someone is addicted to narcotic pain medication, and the evidence suggests that Mr. Simpson has become so addicted, that person should be weaned off of such medication in a medically supervised manner; to do otherwise would be reckless.

### *Mr. Simpson's answer to appeal*

Although Mr. Simpson is correct in his assertion that LCG has simply reasserted on appeal the same arguments that it originally presented to the WCJ, we reject his characterization that LCG's appeal was baseless. Notably, the WCJ did not award Mr. Simpson attorney fees or costs despite his having prevailed on all contested issues. The general rule is that an increase in attorney fees is usually allowed where the WCJ awarded a party attorney fees and that party is forced to and successfully defends an appeal, provided that the party properly requests such an increase. *McKelvey v. City of Dequincy*, 07-604 (La.App. 3 Cir. 11/14/07), 970 So.2d 682. Even though we have affirmed the judgment of the WCJ, we decline to award Mr. Simpson any attorney fees on appeal because the trial court did not award attorney fees and Mr. Simpson has cited no legal authority for us to award attorney fees for defending the judgment in such an instance. *See Battiste v. Dolgencorp*, 09-683 (La.App. 1 Cir. 10/27/09), __ So.3d __ ; *Lafleur v. M. Langenstein & Sons, Inc.,* 09-140 (La.App. 4 Cir. 7/15/09), 16 So.3d 1178.

**DECREE**

For the foregoing reasons, the judgment of the WCJ is affirmed in all respects. Mr. Simpson's answer to appeal is denied. All costs of this appeal are assessed against Lafayette Consolidated Government.

**AFFIRMED. ANSWER TO APPEAL DENIED.**