STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-369

DONALD TANKS

VERSUS

CB&I, INC., ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 18-00674
DIANNE M. MAYO, WORKERS' COMPENSATION JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
D. Kent Savoie, Judges.

AFFIRMED.

Tobin James Eason
Kenneth B. Givens
Weiss & Eason, L.L.P.
Post Office Box 8597
Mandeville, Louisiana  70470
(985) 626-5358
Counsel for Defendants/Appellants:
        CB&I, Inc.
        XL Specialty Insurance Company

Gregory S. Unger
Workers' Compensation, LLC
3045 Ridgelake Drive, Suite 201
Metairie, Louisiana  70002
(504) 838-8811
Counsel for Plaintiff/Appellee:
        Donald Tanks

**KEATY, Judge.**

The employer, CB&I, and its workers' compensation insurer, XL Specialty Insurance Company (collectively CB&I), appeal a judgment rendered in favor of the claimant, Donald Tanks, on the grounds that the Workers' Compensation Judge (WCJ) erred in failing to find that Tanks forfeited his claim for benefits by being untruthful on his employment application. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On the morning of January 8, 2018, Tanks arrived at his worksite and attended a routine safety meeting with the other riggers working on a CB&I project in Hackberry, Louisiana (the Hackberry project). It had rained all weekend, and the area was muddy. As he was walking toward his crane to begin working, he stepped into a flooded hole and sunk down to his waist. Tanks was taken by ambulance to the emergency room at West Calcasieu Cameron Hospital where he was diagnosed with "acute lumbosacral strain." He began treatment with chiropractor, Dr. Michael Haydel, on January 10, 2018. Tanks' chief complaints were of low back pain and right shoulder pain that began immediately after the accident. An X-ray of Tanks' lumbar spine taken that day revealed "[n]o abnormality." Dr. Haydel diagnosed Tanks with a "lumbar sprain/strain with associated neuritis/radiculitis" and with right shoulder sprain/strain . . . with muscle spasms," and he restricted Tanks from work.

Tanks filed a Form 1008 Disputed Claim for Compensation (Form 1008) with the Office of Workers' Compensation on January 31, 2018, alleging that he injured his back in the January 8, 2018 accident. He alleged that CB&I had not paid any wage benefits nor had it authorized any medical treatment. Tanks sought treatment from his choice of neurosurgeon and chiropractor, as well as statutory penalties and attorney fees for CB&I's failure to reasonably controvert his claim. In its initial

answer to Tanks' claim, CB&I denied that he was injured and/or disabled in a work-related accident. By way of an amended answer, however, CB&I asserted that Tanks forfeited his right to collect benefits in violation of La.R.S. 23:1208.1 (hereafter sometimes referred to as "the Forfeiture Statute").

The matter proceeded to trial before the WCJ on February 20, 2019. After both parties submitted exhibits [1] without objection, they stipulated "as to the occurrence of an accident on January 8, 2018, in the course and scope of Mr. Tanks' employment" and to Tanks' average weekly wage of $1,640.87 with a corresponding "max comp rate." The only two witnesses to testify at trial were Tanks and Joel Denison, the safety manager at CB&I on the date of Tanks' accident. After entertaining closing arguments, the WCJ declared from the bench that it was ruling in Tanks' favor, denying CB&I's argument that Tanks had forfeited benefits pursuant to the Forfeiture Statute and denying Tanks' claims that CB&I be cast with penalties and attorney fees. By written judgment dated March 1, 2019, the WCJ found that Tanks "injured his back or aggravated a pre-existing back condition in an accident that arouse out of and within the course and scope of his employment" with CB&I. Tanks was awarded continuing temporary total disability benefits (TTDs) "at the weekly rate of $653.00 retroactive to the date of the accident, plus interest, subject to a credit for short term disability benefits paid under the employer's disability benefit plan." The WCJ further ordered that Tanks was "entitled to all reasonable and necessary related medical benefits," and it ordered CB&I to pay all of Tanks' "outstanding related medical expenses," to reimburse Tanks for all of the related medical expenses that he had paid, and to "authorize future related medical treatment with [Tanks'] choice of physician."

_____

[1] Tanks introduced twenty-one exhibits, and CB&I introduced nineteen exhibits.

CB&I now appeals, asserting in its sole assignment of error that the WCJ erred in denying the application of La.R.S. 23:1208.1 to defeat Tanks' request for benefits. Tanks filed an Answer to Appeal wherein he requested that this court award his costs and attorney fees.

## LAW AND DISCUSSION

Louisiana Revised Statutes 23:1208.1, titled "Employer's inquiry into employee's previous injury claims; forfeiture of benefits," provides, in part:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1.

We are compelled to note at the outset of this opinion that CB&I, in its reply brief to this court, clarified that "this is not a Second Injury Claim. The issue is the direct relationship between the prior injury and the current injury." Accordingly, we need not determine whether Tanks' untruthful answers impaired its ability to collect reimbursement from the second injury fund. Nevertheless, we must mention the second injury fund in our discussion of the history and purpose of the Forfeiture Statute.

In *Nabors Drilling USA v. Davis*, 03-136, pp. 4-5 (La. 10/21/03), 857 So.2d 407, 413-14 (first emphasis added), the supreme court explained how the Forfeiture Statute fits into the overall workers' compensation scheme:

> In order "to encourage the employment of physically handicapped employees who have a permanent, partial disability by protecting employers . . . from excess liability for workers' compensation for disability [which may result] **when a subsequent injury** to such an employee **merges with his preexisting permanent**

3

**physical disability to cause a greater disability than would have resulted from the subsequent injury alone**," the legislature created the Second Injury Fund. LSA–R.S. 23:1371(A). An employer who "knowingly employs or knowingly retains in his employment" an employee who suffers from a permanent partial disability as defined by the statute is entitled to be reimbursed from the fund if that employee "incurs a subsequent injury arising out of and in the course of his employment resulting in liability for disability due to the merger of the subsequent injury with the preexisting permanent partial disability." LSA–R.S. 23:1378(A)(1).

In order to assist the employer in meeting its statutory burden of establishing that it "knowingly" hired a worker with a preexisting permanent partial disability so as to qualify for reimbursement from the second injury fund, LSA–R.S. 23:1208.1 permits the employer to obtain medical information from an employee or job applicant concerning preexisting conditions. The same statute that permits this inquiry also states that the employee's failure to answer the employer's inquiry truthfully shall result in the forfeiture of workers' compensation benefits *provided certain enumerated circumstances are met.*

The *Nabors* court further noted that:

**Forfeiture is a harsh remedy; therefore, statutory forfeiture provisions such as LSA-R.S. 23:1208.1 must be strictly construed**. *Wise v. J.E. Merit Constructors, Inc.,* 97-0684 (La.1/21/98), 707 So.2d 1214, 1218. By its express terms, LSA-R.S. 23:1208.1 provides for forfeiture under three circumstances. There must be (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. *Id.*, *citing Resweber v. Haroil Const. Co.,* 94-2708, 94-3138 (La.9/5/95), 660 So.2d 7. The employer has the burden of proving each of the elements required by the statute. *Wise,* 707 So.2d at 1218. **The lack of any one of the elements is fatal to the employer's avoidance of liability under the statute**. *Id.*

As we noted in *Wise,* 707 So.2d at 1219, **untruthful answers alone do not result in the forfeiture of benefits** under LSA-R.S. 23:1208.1. The employer must also prove that it provided the employee with notice comporting with the dictates of the statute.

*Id.* at 414 (emphasis added). *See also Benoit v. Ace Transp.*, 10-371 (La.App. 3 Cir.

12/8/10), 51 So.3d 192, *writ denied,* 11-14 (La. 3/25/11), 61 So.3d 663.

Our supreme court discussed the policy considerations at play in the Forfeiture

Statute in *Nabors*, 857 So.2d at 414-15 (emphasis added), where it noted:

[T]he legislature has decided to specifically impose a requirement that the **untruthful statement concerning a prior injury will result in forfeiture of benefits only when the false statement causes prejudice to the employer**. Louisiana Revised Statute 23:1208.1

4

states: forfeiture only occurs "provided said failure to answer directly relates to the medical condition for which a claim for benefits is made. . . ." *See Resweber*, 660 So.2d at 16. This proviso strikes a careful balance. It reflects the legislature's recognition of the harshness of the forfeiture penalty and attempts to ameliorate the harshness of that penalty for the individual who is simply in the position of trying to obtain or maintain gainful employment, while at the same time preserving the goal of the second injury fund, which is to enhance employment opportunities for those who have been previously disabled. Thus, it is not every untruthful statement on a medical history questionnaire that will result in the forfeiture of workers' compensation benefits for a subsequent work-related injury. It is only those statements that rise to the level of meeting the statutory proviso of LSA-R.S. 23:1208.1 that will subject the employee to forfeiture.

"A WCJ's determination regarding forfeiture of benefits is subject to the manifest error/clearly wrong determination." *Dugas v. AutoZone, Inc.*, 12-727, p. 4 (La.App. 3 Cir. 12/5/12), 103 So.3d 1271, 1275, *writ denied*, 13-45 (La. 2/22/13), 108 So.3d 775. In keeping with its recognition that La.R.S. 23:1208.1 "provides for forfeiture under narrow circumstances," the supreme court in *Wise* noted that whether a claimant should be found to have forfeited his claim to workers' compensation benefits must be decided on a case by case basis, taking into account "the circumstances of [each] case" under review. *Wise,* 707 So.2d at 1215, 1218.

When Tanks applied for a job with CB&I on April 26, 2017, he was asked to complete a five-page Second Injury Board Knowledge Questionnaire. The first and last page of the Questionnaire contained a notice which appears to meet the technical[2] requirements described in La.R.S. 23:1208.1. The second page contained the following instructions: "Please place a check in the appropriate box next to each medical condition listed below. Each illness or condition requires a Yes (Y) or No (N) answer. For all conditions that you check yes, write a brief explanation on the Explanation Page." Additional instructions titled "<u>Disease and Other Medical Conditions</u>" asked the applicant to: "(Please check the appropriate box. Each

---

[2] "[N]otice shall be prominently displayed in bold faced block lettering of no less than ten point type." La.R.S. 23:1208.1.

illness/injury requires a Yes (Y) or No (N) answer.).” Underneath the instructions was a chart containing fifty-two (52) medical conditions. The bottom two-thirds of page two of the Questionnaire was titled “<u>Surgical Treatment</u>,” which again directed the applicant to: “(Please check the appropriate box. Each illness/injury requires a Yes (Y) or No (N) answer.)” Ten surgeries were listed. Tanks checked “N” to all the boxes on page two. The third page of the Questionnaire was titled “<u>EXPLANATION PAGE.</u>” Tanks wrote “N/A” in the first blank on page three. The fourth page of the Questionnaire contained the following five questions, which all gave the option to check “Yes” or “No,” with further questions to be answered if the answer to any of the questions was “Yes.”

1. Has any doctor ever restricted your activities?

2. Are you presently treating with a doctor, chiropractor, psychiatrist, psychologist or other health-care provider?

3. If you are presently taking prescription medication other than those listed on the Explanation Page, please complete the requested information below.

4. Have you ever had an on the job accident?

5. Has a doctor recommended a surgical procedure, which has not been completed prior to this date, including but not limited to knee, hip or shoulder replacement?

Tanks answered “No” to all five questions.

CB&I’s primary argument on appeal is that the WCJ erred in not finding that Tanks forfeited his right to benefits because his answers to questions one, four, and five were untruthful. Specifically, CB&I submits that “on February 15, 2014, [Tanks] sustained an on-the-job injury to his foot involving a crane incident in Geismar, Louisiana.” According to CB&I, Tanks soon “began having complaints of back pain” for which he sought treatment with Dr. Rand Voorhies, a neurosurgeon, who, in May 2015, recommended that Tanks undergo a lumbar fusion and restricted his activities. CB&I likens Tanks’ 2018 injury to his 2014 injury, arguing that Tanks sustained

6

injuries to his low back in both instances. CB&I insists that the mechanism of the trauma is not the standard to be used in considering the applicability of the Forfeiture Statute, but rather the determining inquiry is whether there is a direct relationship between the prior injury and the current injury. Because Tanks' medical providers gave him restrictions regarding his low back after both his 2014 injury and his 2018 injury, CB&I contends that it met its burden of proving a direct relationship between Tanks' prior and current injuries. It further submits that "there was indeed prejudice to the Employer because the significant injury herein, a back injury, is precisely the same injury that occurred several years earlier for which the Employee desired a low back surgery and was even compensated for in a prior worker' compensation [sic]."

Tanks submits that given the unique circumstances of this case, the WCJ's conclusion that CB&I failed to meet its burden of proving all three elements necessary to make the Forfeiture Statute applicable is not manifestly erroneous or clearly wrong. Tanks notes that while he freely admitted at trial that some of his answers to the Questionnaire were untruthful, it was not his intent to provide untruthful answers. Tanks testified that he suffered a prior injury to his left foot that led to his having back pain and a recommendation for back surgery, which he declined to pursue. He points out that his 2014 accident occurred while he was working for CB&I; therefore, he submits that his failure to note it on the Questionnaire should not cause any prejudice to CB&I as it was most certainly aware of its occurrence. Additionally, he points to his trial testimony wherein he explained the circumstances surrounding his completion of the Questionnaire when he reapplied for employment with CB&I in April of 2017. He had made the three hour drive from New Orleans to Hackberry that morning. Once there, the applicants stood and waited until the position they were applying for was called. Tanks stated that

7

the positions of "rigger" and "CCR certified"[3] were called approximately two hours after he arrived at the site. As a result, he was in a hurry and did not take the time to read everything, so he "checked off the questionnaire to try to get to the next stage to end this hiring on process." Tanks refers this court to the trial testimony of Joel Denison, the CB&I Safety Manager on the Hackberry project at both the date of Tanks' interview and the date of his 2018 injury. Denison explained that the hiring process in April 2017 was very chaotic as approximately 12,000 people were applying for employment with CB&I.[4]

Accordingly, Tanks contends that the appealed judgment is correct because CB&I failed to meet is burden of proving the applicability of the Forfeiture Statute.

***WCJ's Oral Reasons for Judgment***

At the close of the trial in this matter, the WCJ made the following oral ruling:

> What I find here is that Mr. Tanks did have an injury to his foot in 2014 and because of his antalgic gait[5] caused pain to his back at the [L]4-L5 area. In 2017, he went to work for CB&I and he worked nine months without an injury and when he did have an injury, he had injury to L3-L4 L5-S1, re-injured L4-L5 and his shoulder and neck and for me to deny him workers' comp benefits because he rushed through an application and didn't divulge that he had a prior injury to the L4 and L5 with all these new injuries that he did receive, I don't think the Act recognizes -- or wants me to do this because they say he may lose his benefits and with that being permissive that he may lose his benefits, I'm going to say that he was injured. There are new injuries. I think if the only thing that was injured was L4 and L5 then you have a clear cut case for a 1208.1 fraud, but that's not the totality of his back injury. If that was all that was injured, then, yes, you would have to bear your burden, but we have too many new injuries that are not related to the L4-L5 along with -- you have a shoulder, the neck, so you are entitled to a contribution - or a reimbursement of any payments or credit -- any payments that he did receive from his short-term/long-term disability.

---

[3] CCR stands for Central Contractor Registration, a supplier database used by the United States government.

[4] Mr. Denison explained that CB&I is a global corporation involved in many joint ventures across the country, and he did not have access to information regarding whether an applicant such as Tanks had suffered an on-the-job accident as a former employee. We find that whether the safety manager knew of Tanks' prior injury is not particularly indicative of whether CB&I should have been aware that Tanks had been previously injured when he was its employee.

[5] An "antalgic gait" is a way of walking that a person develops as a way to avoid pain.

But I am going to say that he's entitled to indemnity benefits. He is entitled to any medical that he has had and has not been paid; he's entitled to that.

Given Tanks' admission that his answers to the Questionnaire were untruthful, CB&I is relieved of the burden of proving the first prong for applicability of the Forfeiture Statute. *See Wise*, 707 So.2d 1214. Thus, we must decide whether Tanks' untruthful answers directly relate to the medical condition at issue in his current claim for benefits and whether CB&I's Questionnaire complied with the notice requirements of the Forfeiture Statute.

### *Direct Relation Test*

In 1998, the supreme court was tasked with addressing "a split in the courts of appeal on the interpretation of 'directly relates to the medical condition for which a claim for benefits is made' found in La.R.S. 23:1208.1." *Wise*, 707 So.2d at 1219. The first circuit "urged a 'straightforward reading' of § 1208.1," noting that "the current and past injuries were to the 'exact same areas.'" *Id.* (internal citations omitted). The second, third, and fourth circuits rejected the first circuit's "anatomical identity test." *Id.* In deciding which of those two interpretations were correct, the *Wise* court wrote:

> The legislature has adopted a policy whereby we are to interpret the chapter in ways effectuating relief for workers when their injuries are work related. *Harold v. La Belle Maison Apartments*, 643 So.2d 752 (La.1994). That policy, balanced with the language of § 1208.1 and the harshness of forfeiture, requires us to reject an interpretation of the statute based on a mere anatomical connexity. Instead, we find the interpretation of "directly relates" relied upon by the Second, Third, and Fourth Circuits more in keeping with the clear wording of the statute and the legislative intent. That is, a direct relation is established when the subsequent injury was inevitable or very likely to occur because of the presence of the preexisting condition.

*Id.* at 1220 (emphasis added). *See also Lavalais v. Gilchrist Const. Co., LLC*, 14-785 (La.App. 3 Cir. 2/4/15), 158 So.3d 195. This court, in *Jeffers v. Kentucky Fried Chicken*, 08-1380, p. 13 (La.App. 3 Cir. 4/1/09), 7 So.3d 812, 820, *writ denied,* 09-

9

956 (La. 6/19/09), 10 So.3d 738, observed that the "inevitability test" adopted by the supreme court in *Wise* "lays a very difficult test before the employer, and with good reason: forfeiture of benefits is a harsh remedy. It should require very strict proof."

In the beginning of its appellant brief, CB&I correctly notes that "a direct relationship" cannot be "based on mere anatomical coincidence." Nevertheless, CB&I later insists that it has been prejudiced as a result of Tanks' 2018 accident because he has "corresponding direct, exact anatomical injuries in this instance, just that [he] also had complaints of some shoulder pain." The foregoing statement indicates that CB&I would have this court apply a direct relation test that has been specifically rejected by the supreme court. We will not do so.

CB&I claims that Dr. Voorhies testified that "it would be inevitable that [Tanks'] low back would be re-injured" should Tanks ever attempt to return to manual labor work." We have read Dr. Voorhies' January 23, 2019 deposition, and we find that CB&I has mischaracterized his testimony. Dr. Voorhies agreed that given Tanks' condition when he last treated him in 2016, he would be susceptible to a low back injury, but he declined to use the word "inevitable," preferring to say that it would be "more likely than not." On the other hand, Dr. Voorhies agreed that Tanks would be "very likely" to have continued or increased lumbar pain if he returned to manual labor work. When asked whether he would have "restricted [Tanks] from heavy manual labor positions in 2016," Dr. Voorhies stated that "the consequence of exceeding his limitations is pain." He explained that "there are situations where a patient is at risk for irreversible neurologic deficit," but that he "didn't judge that to be the case" for Tanks. Dr. Voorhies noted that he recommended that Tanks undergo a lumbar fusion to relieve his pain, which he found to be a valid reason to have surgery, as opposed to Tanks' needing surgery due to "impending paralysis."

10

We agree in principle with CB&I's argument that the mechanism of the traumas causing Tanks' prior and current injuries is not the key factor in ascertaining whether a direct relationship exists between them. Nevertheless, we note that neither of Tanks' workplace accidents were caused by him putting any strain on his low back. Instead, his 2014 accident occurred when a crane was lowered onto his foot, and his 2018 accident occurred when he stepped in a flooded hole on his worksite as he was walking from a safety meeting to begin his shift, before he began performing his regular duties as a rigger.

At trial, CB&I elicited testimony from Tanks to show that after he settled his claim against them regarding his February 2014 workplace accident, he began working for Turner Industries in the fall of 2016, which position he held for about six months before being laid off. Thereafter, Tanks was rehired by CB&I in April 2017, where he worked as a rigger on the Hackberry project for over eight months without any restrictions or missed days of work before his January 2018 accident.

According to the Initial Medical Evaluation completed by Dr. Haydel when Tanks first sought treatment within two days after his January 2018 accident, Dr. Haydel noted that Tanks disclosed that he had a work-related accident in 2014 that caused him low back pain. Tanks told Dr. Haydel that he had received treatment for those injuries, that his symptoms had gradually improved over time, and that the symptoms that he was currently experiencing were not similar to those he suffered following his 2014 accident. In the Final Report of an MRI of Tanks' lumbar spine performed on February 22, 2018, following the injury at issue in this case, Dr. Tarun Jolly noted that when compared to a previous MRI from July 29, 2014, the "Exam appears similar." Regarding the L3-L4 region, Dr. Jolly found that the "[d]egree of neuroforaminal narrowing is unchanged since 07/29/2014." Similarly, Dr. Jolly

noted that the "[d]egree of central canal narrowing" of Tanks' L4-L5 region "is unchanged since 07/29/2014."

In *Lavalais v. Gilchrist Construction Co., LLC*, 14-785 (La.App. 3 Cir. 2/4/15), 158 So.3d 195, the employer appealed a judgment rendered by the WCJ in favor of its former employee, awarding him TTDs and past and future medical expenses, and denying the employer's La.R.S. 23:1208.1 defense. In affirming the judgment of the WCJ, this court first noted that "the WCJ was manifestly erroneous in his determination that [the employee] was not untruthful" in his answers to the employer's post-hire medical questionnaire. *Id.* at 203. Nevertheless, we determined that the employer failed to "carr[y] its burden of proof under the direct relationship test element of La.R.S 23:1208.1, prejudice to his employer" finding that there was "a reasonable basis in the record for his decision to find that [the employer] was not prejudiced by the non-disclosure." *Id.* at 208. In doing so, we noted that the employee:

> demonstrated his capacity to work without restrictions as a laborer over the period of his employment until the time of the vehicle accident. Further, the injuries allegedly suffered by Mr. Lavalais as a result of the vehicle accident, although in the course and scope of his employment with Gilchrist, were the result of additional trauma due to an unavoidable vehicle accident while Mr. Lavalais was in route to the job site, and not "while the employee was performing the regular job duties for the employer." *Cudd v. George Koch & Sons*, 94-372, p. 3 (La.App. 3 Cir. 11/2/94), 649 So.2d 505, 507, *writ denied*, 94-2929 (La.2/9/95), 650 So.2d 244.

*Id.*

After having reviewed the testimony and evidence, we cannot say that the WCJ was manifestly erroneous in finding that Tanks did not forfeit his right to collect workers' compensation benefits under the circumstances presented in this case. Tanks testified that he was tired and rushed when he reapplied for employment with CB&I in April 2017, he did not read the Questionnaire before signing it, and

he had no intent to deny the occurrence of a prior accident and/or injury that took place when he was employed by CB&I several years prior. Mr. Denison, CB&I's Safety Manager on the Hackberry project, confirmed that the atmosphere on the date Tanks was rehired was chaotic. We have examined the Questionnaire that Tanks completed in April 2017 and conclude that the fact that he checked "No" to every question lends credence to his claim that he did not intend to provide any false answers thereto. Moreover, the evidence indicates to us that he had recovered from the injuries he suffered in his February 2014 accident enough to resume working as a rigger. Moreover, we conclude that the injuries Tanks received in the 2018 accident did not merge with the injuries he received in the 2014 accident to create a greater injury. The WCJ did not err in finding that CB&I failed to meet its burden of proving that it was prejudiced by Tanks' untruthful statement on the Questionnaire. Accordingly, we need not determine whether the Questionnaire complied with the requirement of La.R.S. 23:1208.1.

*Answer to Appeal*

In its oral ruling, the WCJ declined to award Tanks penalties and/or attorney fees. In doing so, it noted that although such awards presented a "close call," it believed that CB&I reasonably controverted Tanks' claim. We, likewise, decline to award Tanks attorney fees on appeal. See *Battiste v. Dolgencorp*, 09-683, p. 3 (La.App. 1 Cir. 10/27/09) 29 So.3d 616, 617, where, although the appellee answered the appeal, the appellate court denied to award it attorney fees on appeal where it "was not awarded attorney fees below and has cited no valid authority to be awarded attorney fees on appeal." *See also Simpson v. Lafayette Consol. Gov't*, 09-816 (La.App. 3 Cir. 2/3/10) 29 So.3d 727, *writ denied,* 10-477 (La. 4/30/10) 34 So.3d 292.

13

**DECREE**

For the foregoing reasons, the judgment of the WCJ is affirmed.  All costs of this appeal are assessed against CB&I and XL Specialty Insurance Company.

**AFFIRMED.**